May it please the Court, Kevin Green for the appellants. The issue on appeal here is whether a pre-suit demand in this derivative case was excused under Delaware law. And I submit that under any standard of review, de novo, or abuse of discretion, the answer has to be yes for the following key reasons. This is a case in which the company essentially admitted that there were systematic problems in the treatment of options. And to the tune of an accounting restatement of $112 million over six years, and even the admission that as to a couple of grants, the grant date was selected retrospectively to capture a more favorable price. In other words, backdate it. It's also a case in which the chairman and CEO, Jerry Rawls, referred to the expensing requirement as folly in the e-mail to the Financial Accounting Standards Board, and Judge White properly found that he was interested for purposes of demand futility. There are 151 stock grants? 151 granting actions is what they're called. And this internal review or independent review found problems with 105 of them? 105 out of 151 are about 70 percent. And it was said that they were process-related deficiencies. That's the term that was used. What does that mean? I don't know. The report also declared that there was no intentional misconduct or wrongdoing. Malfeasance, right. But it didn't explain it. And in fact, two of the three directors on the audit committee who conducted the investigation were interested in having received backdated options, at least according to the allegations, and were at the pleading stage. Now, this is a case in which not only did the board chairman, Jerry Rawls, refer to the expense requirement as folly, it's a case in which the defendants in the 10-K said that those that were in charge of the option grant practices reached a thorough understanding of the accounting rules. So two-thirds of the stock grants had problems with them, but the problems were just like typos. Is that what you're saying? That's not our position. It was a good deal more serious than that, according to the report itself, that the grant date was off. So again, tell the panel what a process-related deficiency is. Maybe the defendants who wrote that report can tell us. What I can tell you is that we have very compelling evidence here by the defendant's own description that backdating was going on as systematically at Finisar as to not just employees, but officers and, we allege, directors. Six of seven directors received backdated stock options. And in the face of this record, the district court concluded that it was nothing more than sloppy accounting or innocent mistakes, which really is a fact question. Well, but really, I guess, it seemed to me the district court was really looking at, given the standard of review, which you'll agree is abuse of discretion, correct? Yes. And it seemed to me that what the district court was looking at was the failure to plead with particularity. In other words, he was looking at plausibility. For instance, you look at the mere fact that nine of 17 grants were made at or near periodic lows is not sufficient to show that the grants were backdated. That's what his order says. That's what it says. Well, let's look at that. Taking judicial notice of the dates, the court found that the closing stock prices as to some cases were higher the next day than when they would have been at a lower excise price. No inference in choosing the date. That's what the court said. And looking at that, that's true. He said that as to certain grants when he declined to follow what's called the Merrill Lynch analysis, and that's the heart of the legal error. So in fact, if in fact that is the heart of the legal error, are you suggesting that one must follow the Merrill Lynch analysis in every case? It applies in cases under Delaware law because it's been followed and endorsed by Delaware courts as part of Delaware corporate law. That's our position. Well, I guess I looked at Ryan. Where does – where in Ryan does it say that a court must analyze only or must follow only the Merrill Lynch methodology? Ryan is a case in which the plaintiffs relied on the Merrill Lynch methodology and the court of chancery endorsed it. There's a subsequent decision, Conrad v. Blank, where a different chancellor of the same court, of the court of chancery, rejected an attack on Merrill Lynch and said the court will not decline to follow it. And that's in Conrad. Well, decline to follow it is one thing. I guess my worry is that I'd look for a case that says you must follow the Merrill Lynch analysis. And it seems to me that quite the contrary. The course – the cases are suggesting that the court should analyze the Merrill Lynch analysis and determine if the Merrill Lynch analysis is in fact appliable. I guess I'm – again, I'm looking for that case that says I've got to apply it. Because I think that what the district court did is said, well, there's a Merrill Lynch analysis, but I'm questioning now the basis of the Merrill Lynch analysis. For instance, why should it be accepted here? Because the court says in a volatile market, it makes no sense to extrapolate the results of one month's trading for an entire year. I agree. That's what he said. And that's what I respectfully submit he's not allowed to do if Delaware courts allow the plaintiffs to rely on that methodology. So your whole case is based on me finding that one cannot depart from the Merrill Lynch analysis? No, it is not. It's based on the other facts that I mentioned at the outset. This is a case with a number of different factors which, taking all inferences most favorable to the plaintiffs, as is done at this stage of the case, support a reasonable inference of backdating. Now, the Court of Chancery said that the plaintiff may rely at the pleading stage on the Merrill Lynch analysis. And I think the clearest statement that the plaintiff can do that is found in Conrad at footnote 30 of the decision. Well, doesn't Conrad say quite the opposite, a court has the discretion to accept or reject such analysis? I don't know. There it just said it was not persuaded to ignore it. I guess it depends on how you read it. That analysis has been accepted in every Delaware case in which it has been offered. And it's not the only part of our case. It's the other factors that I mentioned, including the late Form 4s, which were filed late even after Sarbanes-Oxley. The district court found that you had pled sufficient facts to show that Directors Rawls and Ferguson, there was doubt whether they could be disinterested, that you had done that. Correct. And as I understand it, you showed that two additional board members were in a similar situation. You bypassed the demand requirement. That would be a majority under Delaware law. Okay. Tell us who the other two are and why your position is you pled sufficient facts to show that they, too, were not disinterested. By the defendant's own description, options to directors at Phinasar were granted by the board itself, by the entire board. That's excerpt from record, page 198. So as I see it, we simply need to allege that options were backdated as to any director. And at the opening brief at page 31, there's a chart of the different grants. There are three grants there that under the Merrill Lynch methodology are to show very disproportionate returns between management and regular investors. Well, you could show purposes of the pleading stage. You could show or allege that they either backdated options or that they were exposed to liability for the backdated options or that they knowingly signed false financial statements with the SEC in the 112-page Second Amendment complaint. Which of those allegations did you make with regard to which of those additional directors? The signing of statements, I believe, was Rawls and Workman, who is not a director. But you put your finger on something I wanted to mention, and that is that it's not only receiving backdated options, it's granting them as well. It's granting a receipt. And this is a case in which it's alleged that it's a disjunctive. It doesn't have to be both. Yeah. Six of seven received. It's a disjunctive. It's one or the other. Judge White noted in the conclusion of his opinion that plaintiffs in this particular case, as shareholders, are not typical of plaintiffs in other cases in that you have access to the books and records of the corporation in this case. What additional – and you had 18 months from the commencement, or roughly, commencement of the suit until the Second Amendment complaint was filed. What additional would have occurred had you passed muster in the judgment of the district court and gone forward? What areas of discovery would you be looking at to address that, that weren't already at your disposal at the pleading stage? I think Judge White made that observation as to further amendment of the complaint. Right. You can actually deny any further amendment. As to discovery, some of the decisions have observed that the plaintiff can plead only so much and only so much can be expected at the pleading stage because the plaintiff is not a fly on the wall in the corporate boardroom when the options are being granted. And board minutes would be interesting to look at in discovery, for example. And those weren't available to the shareholders? To my knowledge, no. I don't think there's been any discovery in this case. I know there hasn't been a discovery. I meant pre-suit or in connection with the – what actually was done. I don't believe that you could get something like board minutes through the books and records action in Delaware. I'm getting close to my time I want to save for rebuttal. I just want to emphasize that this is a case where the district court called really a piece of Delaware law, allowing the plaintiff to rely on the Merrill Lynch methodology, he called it arbitrary, uninformative and not realistic. And you do not find that anywhere in the Delaware cases. And under Kamen v. Kemper, he was bound to follow the rationale in those decisions. Thank you. When you get up, stop the clock. When you get back up, perhaps you could point us to that portion of the second amendment complaint where you attack the disinterested nature of directors other than Rawls and Ferguson. Paragraph 237 is one place. Okay. I can tell you that. Okay. Thank you. Thanks. Good morning. Good morning, Your Honors. David Priebe, DLA Piper for the appellees. Your Honors, Judge White dismissed Plaintiff's complaint in a detailed, thorough, well-reasoned, 22-page opinion, and his judgment should be affirmed. Plaintiffs tried to plead that a majority of the board of directors could not have considered demand, as it's their burden to do so with particularized facts. They tried to do that by pointing to 12 grants to officers or directors. They don't allege, by the way, that any of those grants were among the ones that were remeasured pursuant to the 10-K. Judge White looked at every one of the grants. He took traditional matters of judicial notice about stock prices. He looked at Plaintiff's own allegations. He looked at the Merrill Lynch analysis and his logic, found that there was no pattern of backdating. And Your Honors' observation that there were some grants that were priced at relatively high price is replete through Judge White's opinion. There are instances where we have grants at the very highest day of the month, and there are grants very high-priced. I was going to give you the same question I gave the other side. What is a process-related deficiency? Well, a process-related deficiency could be an error in judgment as to processing paperwork, such as Form 4. Also, a misunderstanding as to when all of the steps needed to complete the grant granting process are completed. And Judge White aversed to that in talking about an SEC letter from September 2006 that aversed to instances where it may be unclear, especially after the fact is exactly when the process was done. Is it the day that a UWC was signed? Is it the last day? Roberts, Well, you had a process-related deficiency rate of about 60 percent. Do I have that right? Maybe even higher. Maybe 65. For some of them, but plaintiffs refer to the 10-K as an admission. Judge White looked at what the 10-K actually stated in the context of what did the company admit. So you have, in the scope of an admission, you need to look at what actually was said. And what was said was that none of those grants were under the auspices of any director other than Mr. Rawls, that all of those grants are within the Stock Plan Committee. Now, nothing in the complaint alleges otherwise. The complaint alleges that the members of the Compensation Committee were responsible for grants to the officers. That's in paragraph 67. Roberts, does receipt of a backdated option render a director disinterested for the purpose of demand futility? Yes. And how many members of the board received backdated options? Zero. And you can look at that. The Court looked at that in a grant-by-grant basis. That's your contention. According to the Second Amended Complaint, four of the directors did, correct? The Second Amended Complaint points to particular grants that they conclusorally allege are backdated. One of those grants is an August 31 grant to Directors Stevens and Trempont, right? So that's the only grant to those two directors. As the district court noted, it took judicial notice, Finisar had publicly announced four weeks earlier on August 2, 2005, in an 8K, that these gentlemen were going to be appointed to the board and that they would start on August 31, which happens to be the exact date that plaintiffs say they received the grant. It couldn't have been backdated. And what that episode shows as well is that a plaintiff's complaint says, well, it's suspicious because there's an 800 percent return on this Merrill Lynch annualized return. And I do want to get back to Merrill Lynch. But if their Merrill Lynch analysis suggests that this grant is problematic, yet we know it couldn't have been backdated based on traditional, well-accepted methods of judicial notice, what does that tell you about the Merrill Lynch analysis? It doesn't raise any factual issues. It just matters of judicial notice. Roberts. What's the nature of the dismissal we're dealing with here? A dismissal with prejudice for failure to plead to man's futility under Rule 23.1, a pleading rule of Federal court. The Court applied Delaware substantive corporate law. And in particular, it applied Ryan v. Gifford. Your Honor, your question about whether a – if a director receives a backdated grant, whether it's well pleaded and alleged, the director did that, whether he would be disabled from considering demand is a good one, because that's what Ryan v. Gifford held. And that's what Judge Wee didn't argue to the contrary, and Judge White didn't argue to the contrary. We followed Delaware law. We followed Ryan v. Gifford. But what they found here is that, looking at the allegations of the complaint, considering them carefully, using some elementary mathematics, it didn't plead that a majority of directors had made or received backdated grants. Well, alleging that a director received a backdated grant would be one way of excusing the pre-suit demand, but it's not the exclusive. The exclusive way of alleging that is what more would plaintiffs have needed to allege beyond saying here are two more directors who received backdated grants? What else should they have alleged had they had them? What was lacking? Well, it's either the making of a grant or the receipt of a grant. In terms of making grants, the compensation committee members are responsible for grants to officers. But all of the grants to officers are within the 12, and the Court found that there was no pattern of backdating. And if you look at it carefully, the only member of the compensation committee, I might add, who is implicated in any of the grants to officers at issue in this case, taking aside the ones where we have judicial notice that couldn't have been backdated. What would be involved for the directors being exposed to liability for backdated grants or filing false statements with the SEC, would their knowledge of what had occurred be an element of that? Yes, their knowledge would be an element. And you wouldn't necessarily have that at the pleading stage, would you, or pre-suit? Well, actually, that's an interesting question. And here, this is a particular case where you do have to have it at the pleading stage for two important reasons. Number one, if the rule was otherwise, you're placing the cart before the horse. Taking discovery is a litigation decision. But until a shareholder plaintiff overcomes the presumption that a board of directors is allowed to make litigation decisions to the contrary. All right. The Court's drawing reasonable inferences from the circumstances that are presented, and that will inform whether they go further. But is that what, you know, if you look at Ryan or you look at Conrad, many of the factors that were present in those cases are also alleged here, aren't they? I respectfully disagree. And to that end, I'd actually like to read, as Judge White did, take a close look at Ryan v. Gifford, and it will also talk about Merrill Lynch, and then I want to look at Conrad, because it raises some of the questions. What did Ryan v. Gifford actually say about the backdating allegations in that case? I quote from page 354. Plaintiff supports his claim that backdating occurred by pointing to nine option grants over a six-year period where each option was granted at a low point. That is, every challenged option grant occurred during the lowest market price of the month or year in which it was granted. In addition to pointing specifically to highly suspicious timing, plaintiff further supports his allegations with empirical evidence suggesting that backdating occurred, and then the Court talked about Merrill Lynch. The Court then concluded, this timing, by my judgment and by support of empirical data, seems too fortuitous to be mere coincidence. Three important points, Your Honor. Number one, in this case, taking all of the allegations as true, there isn't anything remotely like nine grants out of nine grants all at the lowest price points. Judge White looked at the allegations. Judge Mike White looked at the stock prices. Plaintiffs haven't even alleged otherwise. Two, the Ryan chancellor applied his judgment to the data in that case. That's exactly what Judge White did here. It can't be an abuse of discretion. It can't be a departure from Delaware law. It can't be improper. Three, if you look carefully, Ryan did not hold that a Merrill Lynch analysis by itself alleges backdating. And that's significant. We have several grants where plaintiffs don't even allege that it was a low price point, but they say it had an unusually high Merrill Lynch return. Rather, Merrill Lynch was further support where we already had the allegations of nine grants out of nine all at the lowest price points. Your Honor's questions about Conrad v. Blank and footnote 30 are very appropriate. There, the defendants tried a different form of a 20-day analysis using an expert, which we didn't do, and the Court simply said, I'm not persuaded that that's better. Same thing in Edmond v. Getty, the Western District of Washington case cited by the plaintiffs. The defendants tried a 40-day analysis and admitted it at oral argument. They didn't think it was better, and the Court naturally said, I'm not persuaded. Plaintiffs also cite Weiss v. Swanson, footnote 37. There, the Court explicitly said, I don't have to reach defendants' methodological analyses of Merrill Lynch because even without Merrill Lynch, the element in question, which was materiality, is pleaded. Your Honors, none of those courts said, wait a minute, Ryan v. Gifford is an inviolate, unchallengeable matter of Delaware law. Rather, they considered particular methodological criticisms that were presented to them and decided whether they were persuaded. Here, we presented different criticisms, actually ones which were much more simple, based in part on the illegitimacy of extrapolating from a rump short period of a year to a full year, and the judge was persuaded. And his decision was thorough, careful, well-reasoned, and reasonable. As I mentioned, the Plaintiffs rely on 12 challenged grants made to officers and directors to claim that a majority of directors either made or received backdated grants. And we know it's not challenged. There's no pattern of backdating such that you can infer that all of them are bad. We, you know, we in the district court took Plaintiffs' allegations very seriously. We walked you through each one of those grants. The judge, Judge White, in his two opinions, looked at each one of those grants, found that many of them were high-priced points. He called some of them, and found that no directors other than Ferguson or Walls were implicated. And we hadn't alleged, we didn't even claim that Mr. Walls would have been disinterested. But nothing in the com-if you look at the 12 grants, nothing in the grant, if you look at it on a director-by-director basis, nothing implicates the other directors. So we've got 12 challenge grants, and I do want to walk you through this. Four of them have real-time public disclosures which support the grant dates. I mentioned the one to Stevens and Trempont on August 31, 2005. We have an 8K four weeks earlier saying that they're going to join the board on August 31. We have two other instances of that, where a person has joined the company in acquisition. The acquisition is announced the same day. We have other grants where grants are accompanied by a contemporaneous Form 4 within the required, at the time, two business days. I don't suggest backdating. Five other grants to officers, and they're from they're basically from 2000 until 2003, were made to officers. Now, the complaint alleges that grants to officers were the responsibility of the Compensation Committee. The complaint on paragraph 69 alleges who was on the Compensation Committee, and that also appears in Judge White's order. But for five of those grants, if you want to write them down, it's June 15, 2000, August 15, 2000, April 3, 2001, October 10, 2001, and April 29, 2003, the only member of the Compensation Committee at the time, who was still on the board at the time of the lawsuit, is Mr. Ferguson. We've already taken Mr. Ferguson out of the equation. So it doesn't do anything to implicate any of the five others. So those grants are really irrelevant. Only three remain, Your Honor. June 7, 2002, which were to officers and directors, August 27, 2003, which were to officers and some directors, and September 5, 2003. Your Honor, if you look at the respective paragraphs of the complaints, there isn't even an allegation that any of those grants were at the low price point of a month or a quarter or a year. Plaintiffs are relying solely on Merrill Lynch, and we saw that even Ryan V. Gifford didn't rely solely on Merrill Lynch. If a board meets on September 1st and grants a stock option to a director dated July 1st of the same year, is it backdated? Yes, unless there was some other information that a decision had been made. If – I can posit some theoretical situations we don't allege here, but yes. Okay. Okay. You have about 30 seconds, and you can give it to us or keep talking. Just in conclusion, I mean, Judge White, he was really – he's adopting the fundamental Delaware corporate law and really following Ryan V. Gifford and all the other cases, and he just did a really outstanding job, I think, looking very carefully at the logic and all the data and very traditional matters of judicial notice. There are no experts here. There are no complex formulas. There's no math that an 8th grader can't do. He did an excellent job in his position. Okay. Thank you. Thank you for your argument. Thank you for coming in this morning. Rebuttal, counsel. I think you saved a little over 3 minutes. Thank you, Your Honor. Briefly, and to return to your question previously about the complaint, it is paragraph 237 of excerpts of record, page 113, and the option grants are discussed at paragraphs 93 to 104 that begin at excerpts of record, page 68, and that's in volume 2. I think it's an extremely pertinent question to ask of how is this case like Ryan or like law and heard the argument that it's necessary to challenge all the grants or some large percentage. This case is 12 of 17 to management that were challenged. Conrad was 12 of 51, and that's a case where demand was futile. And it's not the case that every grant has to be at the bottom of the trough, and that's where the statistics come in. They're just one piece of the analysis, but they do tend to show a pattern. And Judge White thought that it was too much guesswork as to what threshold do you have to meet when you're looking at it. Well, but isn't Finisare correct? Merrill Lynch is not talismanic. I mean, it's a factor that is to be considered, but the analysis is not determinative at this stage, is it? Or is it your position Delaware law flatly declares that you pass muster under Merrill Lynch without regard to context and so forth, that that's sufficient? Never without regard to context, but our position is that the plaintiff is allowed to rely on Merrill Lynch at the pleading stage for purposes of excusing demand, and I would invite the Court's attention to the plaintiff's position. Scalia, I guess my worry about that is this. It seems to me that when one pleads under present pleading standards, one has to give me a plausible reason. And it isn't enough, well, I don't think it's enough, just to say this is this, because there's a difference, really, between innocent heirs and fraud. And it's the plausibility of what you've pled in making that analysis that Judge White focused in on. He took every one of these cases, as the Counsel has suggested, and went right at each one and suggested why it either approved or disapproved of what he thought was a plausibility analysis. Now, on a summary judgment, abuse of discretion in this particular case because of the pleading standards under Rule 23, how do I get there? That's the problem. That's why I went through the same analysis your opposition did, took each count, each one by itself. I can tell you what was said, what wasn't said, and why it isn't. Give me at least one where he was so absolutely wrong that I can't follow his analysis. I think to say it's an innocent explanation and fraud really is a fact question that isn't determined now. I mean, it's summary judgment or trial. This is a case where the company admitted that there was a systematic problem in addition to the late Form 4s and the other factors that I mentioned. And if you look at this case in the context of the Delaware decisions and the methodology they allowed the plaintiff to use, there was more than adequate facts alleged here, and the judgment should be reversed. I don't know if there's any questions. Roberts. Thank you, counsel. Thank you for coming in. Very interesting case. It's submitted for decision.
judges: Pro, Hawkins, Smith N. R.